THOMPSON, J.
 

 The plaintiff bank, an unsuccessful bidder for the fiscal agency of the public funds of the parish of Ascension for the years 1927 and 1928, instituted the present mandamus proceeding to compel the police jury of said parish to accept its bid and to enter into a contract with the said bank as depository of the public funds for the years stated.
 

 The bid of the relator’s competitor, the Ascension Bank & Trust Company, having been accepted by the police jury, and a contract haying been entered into with that bank, an exception of nonjoinder was filed by the police jury, which was sustained, whereupon that bank was impleaded and made a party defendant.
 

 After a trial, the court below rendered judgment, ordering the police jury to reconsider its action in" rejecting plantiff’s bid and accepting that of the other bank, and to “give due and proper consideration to the bid of relator, ' Commercial & Savings Bank, the same being hereby decreed to be a legal and 'valid bid, and to let their funds to the highest bidder therefor consistent with the safety of such funds, all in accordance with the laws pertinent thereto.”
 

 Prom this judgment the police jury and the Ascension Bank & Trust Company have appealed.
 

 The pertinent provisions of the bid of the plaintiff are as follows, our.numbering:
 

 (1) “We will pay interest semiannually in January and July of each year, at the rate of 4 per cent, per annum, on the daily average balances of the accounts of the police jury, various road districts, sheriff’s salary fund, and assessor’s salary fund.”
 

 (2) “We will lend to the police jury of 'the parish of Ascension, when legally authorized to borrow, for its current expenses^ such amounts within the revenues of said police jury as máy be established by its current budget, ,at a rate of interest not to exceed 5% per cent, per annum, said loans to be secured by á .pledge of the revenues of said police jury.” • ‘
 

 (3) “In accordance with section 4, paragraph 5, Act 205 of 1912, we propose to lend.to the police'jury of the parish of Ascension, when the said police jury has been legally authorized' to borrow, an amount equal to the average deposits which it may have kept in our bank at the same rate of interest as we have bid; that is; 4 per cent, per annum.”
 

 (4) 1‘The above clause, is to be construed as applying to deposits with us of money actually owned by the police jury, and not to be deposits of money to the various bodies over which they are the governing authority, .such as road districts, sheriff’s salary fund, etc.”' ' ! ’
 

 . The provisions of the bid of the Ascensión Bank & Trust Company were as follows: ■ •
 

 (1) “We will pay interest on the ávérage'daily balances on all police jury arid várious road'district accounts at the rate of; 3 per, cent, pgr annum, said interest to be paid semiannually on the 1st of January and July.”
 

 (2) “We agree to comply with' the provisions of paragraph 5 of section.4, of the Act 205 of 1912, to lend to your honorable body, when you have been legally authorized to borrow, ' an amount equal to the average deposit which you have kept in our bank at the,,same, rate of interest as your deposit bears.” , -
 

 (3) “In the event it becomes necessary for your honorable body to borrow money for the usual ordinary and statutory- charges,.and expenditures affixed by your budget, in excess of the amount of your average' deposit, we agree to lend you the same at the. rate of interest !of ¡ 6 per cent, per annum.” ;.
 

 
 *935
 
 Although it is stated in argument that the hid of the two hanks, except as to the rate of interest, is practically the same, an examination of the bids clearly shows a marked difference) other than that of the difference in rate of interest, and it was this difference that prompted the action of the police jury and provoked this litigation.
 

 The difference is this: The Ascension Bank & Trust Company offered, in addition to paying 3 per cent, on the average daily deposits, ■to loan the police jury, at the same rate of interest, an amount equal to the average daily deposit kept in the bank; in other words, that bank agreed to comply with the obligations created by the statute, without any exception, reservation, or qualification whatever.
 

 Whereas the complaining bank, while offering 4 per cent, on the average daily deposits on all funds deposited with the bank, proposed to restrict or limit its amount of loans at the rate of interest paid to a sum equal to the average balance of particular funds belonging to the parish.
 

 It will be seen, therefore, that the important question tó be determined is whether the . bid of the plaintiff was a legal bid, in point of law, and the best bid for the police jury, in point of fact.
 

 If .the bid was not in compliance with the statute, or if in point of fact the limitations placed in the bid on the loans that might be required to be made, rendered the bid less advantageous to the pólice jury, then the police jury had the legal right to reject that bid, and, in doing so, its action could not properly be said to be either “arbitrary” or “capricious.”
 

 It is contended by counsel for relator that, although the police jury is by law made the governing authority of road districts, this fact does not make the funds of road' districts parish funds; and the same contention is made with respect to the sheriff’s salary fund and that of the assessor.
 

 We cannot agree with this contention, and we do not think that such an interpretation can be reasonably placed on the provision of the fiscal agency statute under consideration.
 

 Paragraph 5 of section 4 of Act 205 of 1912 declares in plain language that:
 

 All parishes “shall require of the bank or banks selected as its or their depositories, in addition to the payment of interest, to lend to such board or authority, when the same have been legally authorized to borrow,
 
 cm amount equal to the average deposits which it
 
 [the authority letting]
 
 may have kept in such lank, at the same rate of interest as its deposit lears.”
 
 (Underscoring ours.)
 

 There is not a line or a word in this statute that even remotely suggests that the Legislature, in requiring the fiscal agent to loan to the authority letting the funds, at the same rate of interest, an amount equal to the average daily balances, contemplated a separation for that purpose of the parish funds, strictly speaking, from other funds under the direction and control of the police jury, and to restrict the bank’s obligation to loan only to the extent of the average parish fund proper.
 

 On the contrary, the statute makes it clear that, as.a part of the consideration of receiving the deposits at a specified .rate of interest, the bank shall be required to lend at the same rate to an amount equal to the average daily balances of all funds let by the parish and on which the depositor is to pay interest.
 

 It is conceded by relator that the road district funds, while set apart to the various road districts, and the sheriff’s and assessor’s salary funds, while set aside for the purpose of paying the salaries of those officers, the police jury as the governing authorities have control over said funds in the sense that they are to be deposited in the bank selected as the fiscal agent. This fact is recognized by
 
 *937
 
 the relator in its bid, since it offered to pay a certain rate of interest on the average daily balance of all these various funds, without separation or segregation.
 

 And even in this proceeding the plaintiff is demanding that the police jury enter into a contract with it by which it will obligate itself to deposit with said bank all of the funds, including those of road districts, sheriff’s salary, and assessor’s salary.
 

 All the various funds, while they are kept separate and set aside to meet the purposes for which they are collected; in the accounts of the parish treasurer, they are not so separated when deposited with the fiscal agent; at least, they are not required by the statute to be deposited in separate accounts. If the depository keeps separate accounts showing to which fund the deposit belongs, it is for convenience only, and not because it is required by the statute.
 

 So far as the provision of the statute is concerned, the fiscal agent has nothing to do with the separation of funds. Its duty as defined by the statute is clear, and that is to pay the rate of interest agreed upon on the average daily deposit of all funds deposited with it by the controlling authority and to lend to that authority, when required, at the same rate of interest, an amount not exceeding the average daily balance of all such funds deposited, without regard to the source, nature, or character of such funds and without regard to the purpose to which they are dedicated.
 

 The interest to be. paid by the fiscal agent on the funds deposited is to be calculated, not on any particular fund, or on any particular daily average balance shown by the books of the bank, but upon the average daily balance as shown by the books of the parish treasurer. This interest to be paid by the fiscal agent belongs to the parish, and not to any of the subdivisions having funds on deposit to their credit.
 

 And, further than this, the statute requires the fiscal agent to give security to the police jury in an amount equal to the average amount of deposits and not for any separate or specified fund.
 

 There is no good reason advanced, and we are unable to conceive of any, why the relator, as depository, should have the advantage of taking over all the funds falling under the power of the police jury to let, at a low rate of interest, say 4 per cent, per annum, without the corresponding obligation of loaning to said police jury at the same low rate an amount equal to the average deposit of all of the funds coming under the contract.
 

 The attitude of the relator is to claim all of the benefits of the statute, without incurring the obligation imposed by the statute.
 

 The general alimony tax, and, indeed, practically all of the parish revenues, are collected in the year following that in which the expenses of the parish, to be paid out of such revenues, are incurred.
 

 There are very few parishes, if any, which operate on a cash basis, and it is a fact well known that nearly all of the parishes are borrowers for a longer period during the year than that in which they have a balance to their credit with the fiscal agent.
 

 That condition, we understand, prevails in the parish of Ascension.
 

 Manifestly it would be greatly, to the injury of the parish to let all of the various funds, which have an average balance for practically the entire year, to the fiscal agent at a low rate of interest, and be forced, when it came to borrow, to pay a greater rate of interest, because of the fact that there was a small average daily balance of parish funds proper on deposit with the fiscal agent.
 

 Such a process of reasoning is contrary, if not to the letter of the law, certainly'to its theory and purpose.
 

 It is intimated that it would be unfair to require the bank to lend at the same rate of
 
 *939
 
 interest an amount equal to the average balance of the roa.d funds, where such average balance amounted to, say, $100,000, while the average balance of the parish fund proper amounted to only $5,000, and it is said that, if that rule was applied, there would be little inducement' for the banks to solicit the public funds.
 

 That is but begging the question.
 

 ' It is altogether unlikely and improbable that any parish of the state will ever need to borrow anything like that amount. Besides, the police jury is bound to keep within its anticipated revenues, and no bank could be required, as fiscal agent, to lend any amount to the police jury, unless it was authorized by law and properly secured.
 

 However, we are unable to see anything unfair or inequitable'to the banks in such a re quirement. On the contrary, it would be unfair and unjust to the police jury to force it to-borrow for its usual and statutory charges at an excessive rate of' interest, while its depository was getting the use of $100,000 at a ■very low rate of interest.
 

 , If -the banks of the various parishes are unwilling- to assume the obligation of loaning money- to the police jury to an amount equal to the daily average balance of all the funds kept by said- jury on deposit, at the same rate of interest to be paid for the deposits, they are privileged to decline to act as fiscal agents. -But, where- such banks claim the benefits accorded.by the statute, they must assume the- obligations imposed by the statute.’. , 1 :
 

 Our conclusion-,is that the plaintiff’s bid was not a legal bid, in that it claimed a privilege'not permitted under the statute, and that the police jury acted within its discretion in rejecting the said bid.
 

 •The judgment- appealed from is annulled and reversed, and it is now ordered that the demand of the plaintiff be rejected, at its cost.
 

 O’NIELL, O. J., dissents.